# UNITED STATES BOARD OF TAX APPEALS.

Appeal of JOHN H. PARROTT.           Docket 1.

> An amount was paid to the taxpayer by a corporation of which
> he was a director and the general superintendent. *Held*, that the
> evidence does not establish a gift and that the amount should be
> included in gross income.

Submitted August 19, 1924; decided August 27, 1924.

*Homer Sullivan, Esq.*, for the taxpayer.

*A. Calder Mackay, Esq.* (Nelson T. Hartson, Solicitor of Internal
Revenue) for the Commissioner.

Before the Board, *en banc.*

This appeal was heard on an agreed statement of facts, from
which the Board makes the following

### FINDINGS OF FACT.

1. On May 20, 1920, and for several years prior thereto, the tax-
payer was the general superintendent and a member of the board of
directors of the American Coal Co., of Allegany County, N. J. For
his services as general superintendent he received an annual salary
of $7,000, to which was added a yearly bonus of $3,500, and he also
received director's fees.

2. The taxpayer was also employed as general manager of the
Pawama Coal & Coke Co., another coal mining company, from which
he received a salary of $8,750 per annum. In both companies his
duties were those of general superintendence of coal mining opera-
tions.

3. The American Coal Co. had no regular system for payment of
pensions or retiring allowances to officers or employees and the tax-
payer had no promise or agreement that he should receive any com-
pensation for his regular services other than the salary, bonus, and
fees mentioned.

4. On July 14, 1919, when the corporation had a large accumu-
lated surplus, the executive committee of the company adopted a
resolution as follows:

> *Resolved,* That a gratuitous appropriation equal in amount to $3 per share
> on the outstanding stock of the company be set aside out of the assets for dis-
> tribution to certain officers and employees of the company and that the ex-
> ecutive committee be authorized to make such distribution as they deem wise
> and proper.

At the same meeting the following resolution was adopted:

> The officers of the company are directed to endeavor to secure a bid for the
> company's physical properties or for the shares of stock, and are hereby au-
> thorized to sell the directors' shares at $57 per share at any time subsequent
> to the distribution of $25 per share.

61359°—26——1                                             1

These resolutions were immediately approved by the board of directors, and the executive committee thereupon proceeded to adopt a resolution providing:

In conformity with the authority vested in the committee by the board of directors, and after much discussion and consideration, it was resolved that the appropriation for officers and employees be distributed as follows:

| | |
|---|---:|
| Mr. W. DeL. Walbridge, president | $45,947 |
| Mr. George M. Bowlby, treasurer and auditor | 45,947 |
| Mr. J. H. Parrott, general superintendent | 35,000 |
| Mr. W. F. Woods, secretary | 7,500 |
| Mr. H. W. Holly, assistant treasurer | 5,000 |
| Mr. M. Ambrose, clerk | 2,400 |
| Mr. W. Geffken, clerk | 2,000 |
| Mr. J. Tucker, clerk | 2,000 |

5. On April 24, 1920, a contract was made between William C. Atwater & Co., Inc., and certain stockholders of the American Coal Co. By the contract those stockholders agreed to sell their stock and to procure the sale to the Atwater company of altogether at least 25,000 of the 48,598 outstanding shares of the American Coal Co. at $75 per share, and the Atwater company agreed to buy the entire outstanding stock at the same price if stockholders should deposit it with a trustee by a stated time. The contract provided that the agreed price of $75 per share might be reduced by $10 per share if a dividend to that amount were paid before a stated time, and continued:

* * * it being understood and agreed that the said coal company may, in addition to the dividend hereinabove provided for, distribute a further sum in amount equal to $3 per share on the 48,598 shares of the outstanding stock, in such manner and for such purposes as the directors may by resolution decide in addition to the current expenses of the company.

On April 26, 1920, a letter was sent by the president of the American Coal Co. to its stockholders, telling of the contract and the opportunity to sell the stock at $75 per share, and concluding:

If the purchase is completed, the present officers and directors will resign and be replaced by men selected by the purchasers, and, in that event, the retiring officers and employees will participate in an appropriation equal to $3 per share, unanimously voted to them by the directors, the same with the approval of the purchasers, to be paid from the assets of the company, and will not affect the purchase price of $75 offered for the stock.

6. Practically all of the stockholders turned in their stock and accepted the price offered by the purchaser. On May 20, 1920, the officers of the company distributed the fund appropriated by the executive committee's resolution of July 14, 1919, in the amounts provided by the resolution adopted at their second meeting on that date. By such distribution the taxpayer received $35,000.

7. Thereafter, still on May 20, 1920, the taxpayer and all the other officers and directors of the American Coal Co. resigned and the purchaser of the stock took over its management.

8. The American Coal Co., in its income tax return for the year 1920, treated and claimed the sum so distributed to the taxpayer, and similar sums distributed to others, as a salary deduction from its gross income.

9. The taxpayer, in his income tax return for 1920, excluded from gross income this item of $35,000. On audit the Commissioner of Internal Revenue determined that the item of $35,000 should have been included in gross income, and on July 16, 1924, he notified the

taxpayer by registered mail of his determination and of a deficiency in tax, resulting from this determination and other adjustments, of $101,238.62. On July 31, 1924, the taxpayer initiated this appeal by filing a petition with the Board.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

IVINS: This is an appeal by the taxpayer from a determination of the Commissioner asserting additional income tax for the year 1920. The taxpayer received a certain item of $35,000 which he regarded as a gift and excluded from gross income in his return, but his counsel concedes that if it was not a gift it should have been included. So the only question before this Board for determination is that of whether or not the item mentioned was a gift.

It is urged on behalf of the taxpayer that he was amply compensated for his services to the American Coal Co. by the annual salary and bonus, aggregating $10,500, which he received, and as evidence of this the taxpayer shows that he received $8,750 for similar services to another corporation. But there is nothing in the record to indicate the proportions of time devoted by the taxpayer to the two companies, nor the relative prosperity of the two companies or their ability to pay salaries, so we really have nothing before us to show whether the annual salary and bonus were all the compensation that the taxpayer was justified in expecting from the American Coal Co. for his services or that the directors of the corporation were justified in paying him. The taxpayer's counsel contends that since the amount of the distribution received by the taxpayer was very large, it can not be regarded as compensation additional to his salary, but should be deemed a gift. There is nothing in the record, however, to show how many years the taxpayer had served the corporation, nor that the sum paid him could not represent adjusted compensation over a long period.

The taxpayer's counsel urges that the use of the word " gratuitous " in the resolution of the executive committee of the corporation indicates an intent to make a gift. We are not satisfied that this is so. The appropriation is indicated as being " gratuitous," whatever that may mean (and it probably merely means that it is not made under compulsion), but it should be noted that the adjective qualifies the appropriation and not the distribution provided for. The resolution provides that the executive committee shall distribute to certain officers and employees of the company " as they deem wise and proper." In a direction to corporate officers, " wise " certainly means for the best interest of the corporation, and " proper " undoubtedly includes within its meaning *intra vires*. There is nothing in the record to show that, at the time the directors approved the resolution of the executive committee for the distribution of this appropriation, everybody concerned did not expect the corporation to continue its corporate existence under its same management. The mere fact that the directors authorized the officers to endeavor to secure a bid for the company's physical properties or for the shares

of stock and to sell the directors' shares at a stated price did not necessarily indicate any intent to terminate the existence of the corporation or change its management, and the record does not show that the resolution under which the taxpayer received the item in controversy was in any way related to the resolution authorizing the securing of bids or that its execution was intended to be in the slightest degree contingent upon the sale of the property of the corporation or of the stock thereof. For all that appears in the record it might well have been that adjusted compensation, such as is commonly called a bonus, was intended for the purpose of rewarding officers and employees for long and faithful service and of encouraging them and their successors to fidelity and zeal in the future.

We must judge the corporate intent from the corporate acts themselves, not from the interpretation placed upon them by some individual. The corporate acts in this case were the resolutions mentioned, authorizing a wise and proper distribution. The contract between certain stockholders and William C. Atwater & Co. was not a corporate act. The deposit by other stockholders of their shares under the provisions of that contract was not a corporate act, nor can it be deemed in any way a ratification of a gift proposed by the directors to be made by the corporation to certain of its officers, for the most vivid imagination can not find in the letter to the stockholders any intimation that the proposed distribution was to be regarded as a gift. Corporate action is presumed regular until shown to be otherwise. The payment of a bonus would be regular, the making of a gift would be irregular.

The taxpayer's counsel, in seeking to demonstrate that the distribution should be regarded as a gift, asserts that when the letter of April 26, 1920, was sent by the president of the American Coal Co. to the stockholders and they severally deposited their stock with the trustee under the contract and received payment therefor, what transpired was in effect (in addition to the sale of the stock) a distribution of a dividend of $3 per share to all the stockholders, followed by a return of the sum so received by each of them to the executive committee of the corporation to be distributed as a gift from the stockholders, as individuals, to the officers and employees who received it. We fail to find in the record any evidence of any of the steps necessary to this line of argument. The money had been appropriated 10 months before and the exact amounts to be distributed to each recipient determined. The notification to the stockholders that the retiring officers would participate in an appropriation can hardly be construed as a dividend to the stockholders, nor can the decision of a stockholder to sell his stock at a stated price be construed as a gift by him of any sum of money to certain officers. It should further be noticed that the president's letter itself says that the distribution will " be paid from the assets of the company." There is certainly nothing here to indicate that these assets were distributed to the stockholders and then refunded by the stockholders to the executive committee to be used in making gifts.

In our opinion the taxpayer has failed to establish that the payment in question was a gift, and he is therefore entitled to no relief. The deficiency as determined by the Commissioner is approved.

All concur except Chairman Hamel, who took no part in the consideration or determination of this appeal.